## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Joshua W. Lamy

    v.                                    Civil No. 21-cv-229-SM

N.H. Department of Corrections
Commissioner Helen Hanks et al.[1]


### REPORT AND RECOMMENDATION

Plaintiff, Joshua W. Lamy, a prisoner in the custody of the New Hampshire Department of Corrections ("DOC"), filed this action, asserting federal civil rights claims challenging the defendants' decision to allow some inmates with shorter sentences or earlier release dates to have access to Suboxone or buprenorphine treatment for their opioid dependence before him, as part of the DOC's Medication-Assisted Treatment ("MAT") program for treating opioid addiction.  Before the court for

---

[1]The defendants identified in the complaint are N.H. Department of Corrections ("DOC") Commissioner Helen Hanks, Northern N.H. Correctional Facility Warden Corey Riendeau, DOC Director of Medical and Forensic Services Paula Mattis, DOC Assistant Director of Medical Services Heidi Guinen, DOC Licensed Alcohol and Drug Counselor ("LADC")/Director of Focus Program Diane York, DOC Medication Assisted Therapy Program Coordinator Olivia Gamelin, DOC LADC Patrick Perkins, and DOC Mental Health Provider Jennifer Parent, all of whom are alleged to be DOC officials, employees, and/or providers of mental health and substance abuse treatment services to DOC inmates.

preliminary review is plaintiff's complaint and the addenda to the complaint (Doc. Nos. 1, 6, 7, 8, 9, 10, 11, 12).

## **Preliminary Review Standard**

The court screens complaints filed by inmates seeking relief from government agents.  See 28 U.S.C. § 1915A; LR 4.3(d)(1).  Claims may be dismissed, sua sponte, if the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint does not state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(1)(A).  In deciding whether claims may proceed, the court considers whether, stripped of legal conclusions and with all reasonable inferences construed in plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The court construes Mr. Lamy's filings liberally, as he is pro se here.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## **Background**

Mr. Lamy is a DOC inmate, serving a lengthy sentence for felony convictions arising from a high-speed fatal drunk-driving accident in February 2006, involving multiple vehicles and victims.  See State v. Lamy, 158 N.H. 511, 512, 969 A.2d 451,

453-54 (2009).  Mr. Lamy has been incarcerated in a DOC facility since 2008, and he states that he will not be released until August 2051.

Mr. Lamy reports that he has struggled with alcohol and drug addiction his entire life, including while incarcerated. Doc. No. 10-1, at 12.  While in the custody of the DOC, Mr. Lamy has participated in substance abuse and mental health counselling and rehabilitative programming, but, he asserts, those programs and therapies have not stopped him from accessing drugs or alcohol.  See Doc. No. 9, 5.  Mr. Lamy has violated DOC rules by consuming bootleg alcohol and other drugs.  Doc. No. 9, at 5; Doc. No. 8, at 2; Doc. No. 10-1, at 12.

Some DOC inmates with addiction problems have been allowed to participate in the prison's MAT program.  The DOC makes several types of prescription medications available through its MAT program, including drugs approved for the treatment of alcohol addiction but not opioid addiction (acamprosate and disulfiram); drugs that are approved for the treatment of opioid addiction (buprenorphine, its injectable form (Sublocade), its sublingual or buccal form (Subutex), and Suboxone (a combination of buprenorphine and naloxone)); and a medication that is approved for treating alcohol addiction as well as opioid

addiction (naltrexone and its injectable form (Vivitrol)).[2]  See
Doc. No. 1, at 2-3; Doc. No. 9-2, at 34.

Beginning in 2018, Mr. Lamy asked to be admitted to the
DOC's MAT program for his opioid addiction.  Mr. Lamy asserts
that, on December 10, 2019, defendant Licensed Drug and Alcohol
Counselor ("LADC") Patrick Perkins stated that Mr. Lamy was at
"high risk" for relapsing and was eligible for MAT therapy.  The
"Plan" listed for Mr. Lamy at that time included "Oral
Naltrexone (Revia), injectable long-acting Naltrexone
(Vivitrol), Suboxone, [and/or] Sublocade."  Doc. No. 10-1, at 2.
Mr. Lamy asserts Mr. Perkins said he could start Suboxone MAT
therapy as soon as his mental health providers cleared him for
such treatment.  See Doc. No. 8, at 2-3; Doc. No. 9-1, at 8.

In the meanwhile, in April 2020, Mr. Lamy asserts that he
was found to be under the influence of alcohol in violation of
DOC rules.  Prison officials placed him on "lockdown punishment
treatment."  He was placed in the Closed Custody Unit ("CCU")
for six months, beginning on April 30, 2020.  Doc. No. 8, at 3;
Doc. No. 10-1, at 11.

---

[2] See MedlinePlus, Drugs and Supplements: Acamprosat,
Buprenorphine Injection, Buprenorphine Sublingual and Buccal
(opioid dependence), & Disulfiram, available at
https://medlineplus.gov/druginformation.html (last visited June
14, 2022).

Sometime between April 30 and June 12, 2020, Mr. Lamy alleges, LADC Perkins promised he could start MAT therapy before he left the CCU.  See Doc. No. 8, at 3.  Mr. Lamy has further alleged, however, that in July 2020, Mr. Perkins said that the facility's MAT program was backlogged, and that inmates closest to their minimum parole date were prioritized for MAT treatment. See Doc. No. 9-1, at 5.  And then, on July 28, 2020, Mr. Lamy received additional punishment because of a "dirty urine."  Doc. No. 8, at 3.  He remained in the CCU.

In August 2020, Mr. Lamy asked defendant Olivia Gamelin to put him in the next group to receive Suboxone, but she refused that request.  Mr. Lamy followed up by contacting DOC Medical and Forensic Services Assistant Director Heidi Guinen, who offered in September 2020 to start him on the facility's naltrexone/Vivitrol MAT program.  Doc. No. 8, at 3.  Mr. Lamy agreed to try Vivitrol.  Doc. No. 8, at 3.  He received his first Vivitrol shot after he was released from the CCU in late October 2020.  Doc. No. 8, at 3; Doc. No. 10-1, at 8.

Mr. Lamy asserts that he learned, from an unspecified source, that because he had been previously diagnosed with Hepatitis C, defendants should have given him a blood test to evaluate his liver function before starting him on Vivitrol. Doc. No. 8, at 5.  His medical records indicate that he had been diagnosed with chronic viral Hepatitis C.  See Doc. No. 10-1, at

28.  He asserts that he was not given a blood test before he
started to take Vivitrol in 2020.  Doc. No. 8, at 5.

     Mr. Lamy reports that soon after taking the Vivitrol shots,
he started having a reaction he considered to be severe: a skin
rash or hives, irritability, cramps, restless sleep, muscle
pains, and the inability to maintain an erection.  Doc. No. 8,
at 3-4; Doc. No. 10-1, at 19.  He also asserts that because he
was on Vivitrol, his health care providers limited his access to
certain medications he had been previously prescribed for his
chronic pain.  Doc. No. 9-1, at 6, 48; Doc. No. 10-1, at 24-26.

     In November 2020-January 2021, Mr. Lamy complained to his
DOC health care providers and to prison officials about his
experience with Vivitrol.  Doc. No. 8, at 4-5; Doc. No. 1, at 5-
6.  Mr. Lamy's mental health provider, defendant Jennifer
Parent, concluded that his reaction was normal, see Doc. No. 10-
1, at 47; Doc. No. 9, at 12, Doc. No. 9-1, at 6, and she told
him that the side effects could subside if he continued to take
the shots for another month, see Doc. No. 8, at 4; Doc. No. 9,
at 12; Doc. No. 10-1, at 26, 31.

     Mr. Lamy chose to stop receiving Vivitrol shots in December
2020.  Doc. No. 8, at 5.  When he refused the opportunity to
restart taking naltrexone or Vivitrol, defendant Jennifer Parent
discharged him from the MAT program, explaining that his
reaction to the Vivitrol shots did not meet the criteria to be

considered an allergic response, and telling him to follow up
with his LADC.  Doc. No. 10-1, at 47, 52.  Prison officials have
continued to offer Mr. Lamy the opportunity to resume taking
naltrexone or Vivitrol shots, and he remains on the MAT waitlist
for Suboxone or buprenorphine therapy at this time.  Doc. No. 1,
at 2; Doc. No. 9-1, at 1; Doc. No. 9-2, at 16.

Mr. Lamy asserts that he remains at high risk of relapsing
and of serious harm to his health, so long as he is not
receiving MAT therapy.  He asserts that he has told prison
officials that if illegal drugs come around on the prison black
market, he will try to use them.  See Doc. No. 9-1, at 9.  And
he has filed exhibits indicating that contraband opioids had
been detected in the possession of other inmates in the prison
in 2021.  See Doc. No. 9-2, at 41, 63.

Mr. Lamy prefers to be treated with Suboxone.  He asserts
that DOC officials reserve Suboxone or buprenorphine for inmates
with shorter sentences.  Doc. No. 8, at 7.

Defendants Paula Mattis, Heidi Guinen, Diane York, Patrick
Perkins, and DOC Commissioner Helen Hanks have all told Mr. Lamy
that the Suboxone waitlist exists because there are limited
resources available for Suboxone therapy in the prison.  Doc.
No. 9-2, at 34; Doc. No. 10-1, at 7.  Director Mattis and
Commissioner Hanks have explained that there are federal limits
on the number of patients who may be prescribed Suboxone by a

particular provider, and that some providers may feel
uncomfortable prescribing Suboxone to more than ten to twelve
inmates.  Doc. No. 1, at 5-6; Doc. No. 9-1, at 30, 53, 61; Doc.
No. 9-2, at 10, 34; Doc. No. 10-1, at 7.  In addition, Director
Mattis has noted that space constraints due to COVID-19 limited
the number of inmates receiving Suboxone therapy in 2021.  Doc.
No. 9-1, at 59; Doc. No. 9-2, at 10.  Mr. Lamy has alleged,
however, that more providers have been hired.  <u>See</u> Doc. No. 9-1,
at 8, 64.


## Claims and Procedural History

The claims asserted in this case are the following:

1.   The defendants violated Mr. Lamy's Eighth Amendment
rights, in that, with deliberate indifference to a
substantial risk of serious harm to Mr. Lamy, defendants:

a.   Treated him with Vivitrol without first
conducting a blood test to analyze his liver; and

b.   Kept him wait-listed for MAT therapy and failed
to treat his opioid addiction appropriately –

i.   by denying him access to any MAT therapy
prior to October 2020; and

ii.  by denying him access to Suboxone or
buprenorphine after December 2020, when he
stopped taking Vivitrol.

2.   The defendants have rationed inmate access to
buprenorphine/Suboxone MAT treatment, causing Mr. Lamy to
remain on the waitlist for that medication while others
with shorter sentences and/or earlier release dates have
received that medication, in violation of his Fourteenth
Amendment right to equal protection.

3.    The defendants have violated Mr. Lamy's substantive
due process rights under the Fifth or Fourteenth Amendments
in failing to grant him immediate access to Suboxone or
buprenorphine MAT treatment.

4.    The defendants violated Mr. Lamy's rights under Title
II of the Americans with Disabilities Act ("ADA"), in that
they have kept him on a waitlist for Suboxone or
buprenorphine while allowing other inmates with earlier
release dates or shorter sentences to have access to that
therapy.

Mr. Lamy initially moved for a preliminary injunction in

this case, seeking court-ordered access to the Suboxone while

this case is pending.  The court denied that motion, without

prejudice, finding that he had not demonstrated that a

preliminary injunction was needed to prevent irreparable harm at

this time.  See Feb. 22, 2022 Order (Doc. No. 13).


                              Discussion

I.    Eleventh Amendment and Official Capacity Damages Claims

Mr. Lamy seeks damages and injunctive relief against

defendants in their individual and official capacities.  The

Eleventh Amendment precludes suits for damages against state

employees sued in their official capacities.  See Davidson v.

Howe, 749 F.3d 21, 27-28 (1st Cir. 2014).  Accordingly, the

district judge should dismiss the claims for damages asserted

against defendants in their official capacities.


                                  9

II.  Eighth Amendment Claims (Claims 1(a)-(b))

   A.  Elements

   The Eighth Amendment prohibition against cruel and unusual
punishment requires prison officials to provide humane
conditions of confinement to inmates, including necessary
medical care for serious medical needs.  See Farmer v. Brennan,
511 U.S. 825, 832 (1994).  An Eighth Amendment medical care
claim has both objective and subjective elements.  See Wilson v.
Seiter, 501 U.S. 294, 298 (1991).  "[T]he deprivation alleged
must be, objectively, 'sufficiently serious.'"  Farmer, 511 U.S.
at 834 (citations omitted).  Where an alleged failure to treat a
medical condition forms the basis of an inmate's claim, the
objective component may be established by evidence of a medical
need "'that has been diagnosed by a physician as mandating
treatment, or one that is so obvious that even a lay person
would easily recognize the necessity for a doctor's attention.'"
Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016)
(citation omitted).

   A showing of deliberate indifference to a substantial risk
of serious harm satisfies the subjective prong of an Eighth
Amendment claim.  See Farmer, 511 U.S. at 834.  An inmate
pleading deliberate indifference must show that defendants were
aware of circumstances that gave rise to an inference that a
substantial risk of serious harm existed; that defendants drew

10

the inference that such a risk existed; and that defendants, by act or omission, did not take reasonable steps to ameliorate the risk.  See id. at 828-29; Leite v. Bergeron, 911 F.3d 47, 52–53 (1st Cir. 2018).  Deliberate indifference may be manifested by "'wanton disregard to a prisoner's needs . . . akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (citations omitted).

To prevail on an Eighth Amendment claim, a plaintiff must show that the defendant's conduct was purposeful and not merely negligent.  See id.; Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014) ("'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" (citation omitted)).  Neither a showing of medical malpractice nor an inmate's "disagreement as to the appropriate course of treatment" is generally sufficient to establish deliberate indifference.  Ruiz–Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (internal citations and quotation marks omitted).

B.   Claim 1(a)

In the allegations summarized above as Claim 1(a), Mr. Lamy asserts that defendants treated him with Vivitrol in late 2020 without first testing his blood and assessing his liver

function.  Mr. Lamy's medical records indicate that he has had viral Hepatitis C.  He has further alleged that an unspecified person told him that Vivitrol can be dangerous for people with Hepatitis C, and that he should have undergone a blood test before he started taking naltrexone or Vivitrol.

Mr. Lamy has not alleged any facts suggesting that the person who described the alleged danger to him of skipping a blood test was a defendant.  Nor has he alleged that the person with such knowledge was a DOC official, LADC, or another medical or mental health professional.  Assuming without deciding that the failure to test his blood was a substandard medical practice in his circumstance of which one or more defendants should have been aware, he has not alleged facts to show that such neglect was a manifestation of deliberate indifference to a substantial risk of serious harm, and not merely negligence or medical malpractice.  Therefore, Mr. Lamy has failed to state an Eighth Amendment medical care claim upon which relief can be granted with respect to the failure to test his blood when he started to receive Vivitrol shots.  Accordingly, the district judge should dismiss Claim 1(a).

C.    Claim 1(b)(i)

In the allegations summarized above as Claim 1(b)(i), Mr. Lamy asserts that the defendants violated his Eighth Amendment

rights by failing to treat his opioid addiction with MAT therapy, prior to October 2020.  Mr. Lamy has pleaded that he signed up to be admitted to the MAT treatment program in 2018, but he has not pleaded any facts showing that any mental health professional or medical provider had concluded at that time that he had a serious medical or mental health need for that specific type of treatment.  The facts pleaded in the complaint indicate that Mr. Lamy had been enrolled in other non-medical substance abuse programs and was receiving mental health treatment in that time period.  The facts alleged do not suggest that his need for MAT therapy in 2018 was so obvious that a layperson would have been aware he needed the type of medical attention he sought.

Mr. Lamy has further alleged that in December 2019, defendant LADC Patrick Perkins said Mr. Lamy met the criteria for MAT therapy, that a screening tool showed he was at "high risk" for relapse, and that he would be able to start MAT therapy as soon as his mental health providers cleared him to start taking it.  Although the records signed by LADC Perkins in December 2019 indicate that the "plan" for Mr. Lamy included Vivitrol and/or Suboxone, and that Mr. Perkins promised he would start receiving MAT therapy while in the CCU, Mr. Lamy has not pleaded facts showing that Mr. Perkins or any defendant with authority to cause him to receive MAT therapy was subjectively aware on or before October 2020 that MAT therapy was not just

appropriate for him, but also necessary for him to avoid a
substantial risk of serious harm.  Accordingly, the district
judge should dismiss Claim 1(b)(i) for failure to state a claim
upon which relief can be granted.

      D.    Claim 1(b)(ii)

In the allegations summarized above as Claim 1(b)(ii), Mr.
Lamy asserts that defendants violated his Eighth Amendment
rights by failing to switch his MAT prescription so that he
could receive Suboxone or buprenorphine after he refused more
Vivitrol shots in December 2020.  Mr. Lamy has not pleaded any
facts, however, indicating that any defendant has known that his
decision to discontinue Vivitrol shots was medically indicated
as well as medically necessary, and that the failure of his
health care providers to prescribe Suboxone for him and not
Vivitrol since that time has manifested a substandard treatment
practice, amounting to deliberate indifference to a serious
medical need, and not simply a professional decision about which
form of treatment is adequate under the circumstances.
Accordingly, the district judge should dismiss Claim 1(b)(ii)
for failure to state an Eighth Amendment medical care claim upon
which relief can be granted.

III. Fourteenth Amendment Equal Protection (Claim 2)

The Fourteenth Amendment Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted). "To establish an equal protection claim, a plaintiff needs to allege facts showing that '(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Davis v. Coakley, 802 F.3d 128, 132-33 (1st Cir. 2015) (citation omitted).

Mr. Lamy has alleged that he is eligible to receive Suboxone therapy. He has further alleged that Suboxone therapy is not offered immediately to every eligible inmate. Prison officials have informed Mr. Lamy that other inmates who have been prioritized for Suboxone treatment have earlier minimum parole eligibility dates or shorter sentences. Mr. Lamy has also been offered a different form of MAT therapy (naltrexone or Vivitrol), but not the Suboxone he would prefer to take.

Prioritizing eligible inmates for Suboxone therapy based on the length of their sentence, or the imminence of their parole eligibility date, neither implicates any suspect classification,

nor punishes inmates for exercising any constitutional rights, nor amounts to malicious or bad faith mistreatment targeting Mr. Lamy.  Therefore, the classifications at issue are subject to rational basis review.  See Lombardo v. Wetzel, No. 3:20-cv-225-SLH-KAP, 2021 U.S. Dist. LEXIS 159846, at *10 (W.D. Pa. Aug. 24, 2021), R&R approved, No. 3:20-cv-225-SLH-KAP (W.D. Pa. Oct. 8, 2021) (ECF No. 10).

> Under rational-basis review, where a group possesses "distinguishing characteristics relevant to interests the State has the authority to implement," a State's decision to act on the basis of those differences does not give rise to a constitutional violation.  "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." . . . [T]he burden is upon the challenging party to negative "'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"

Bd. of Trustees v. Garrett, 531 U.S. 356, 366–67 (2001) (citations omitted).

DOC officials are responsible for the safety and security of those residing in DOC facilities as well as the successful re-integration of those released on parole.  DOC officials may rationally conclude that an individual's risk of a catastrophic relapse is heightened if she or he is released and no longer subject to the contraband restrictions and search-and-seizure procedures that apply in prison, and the health and social risks associated with relapse are lower for inmates who have access to

on-site prison health care facilities, mental health services, and rehabilitative programming. Therefore, even if all eligible inmates – regardless of their anticipated release date - were deemed to be similarly-situated for purposes of obtaining Suboxone treatment, but see Chamberlain v. Va. Dep't of Corr., No. 7:20-cv-00045, 2021 U.S. Dist. LEXIS 170554, at *37-38, 2021 WL 4100354, at *14 (W.D. Va. Sep. 9, 2021) (inmates seeking MAT therapy whose release dates are different are not similarly situated), Mr. Lamy has failed to state an equal protection claim upon which relief can be granted. Prison officials "can, consistent with the Equal Protection Clause, ration . . . scarce resources to treat inmates who soon will be back on the street." Lombardo, 2021 U.S. Dist. LEXIS 159846, at *10-11. Accordingly, the district judge should dismiss Claim 2.

IV. Substantive Due Process Claim (Claim 3)

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 721 (2010) (internal quotation marks and citations omitted). A constitutional claim "covered by a specific constitutional provision . . . must be

analyzed under the standard appropriate to that specific
provision, not under the rubric of substantive due process."
United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (citation
omitted).

 In Claim 3, Mr. Lamy seeks relief for defendants' alleged
violations of his right to substantive due process, arising from
the same conduct he asserts as grounds for relief in Claims 1
and 2, arising under the Eighth Amendment and the Fourteenth
Amendment Equal Protection Clause.  As the standards applicable
under those specific constitutional provisions control this
court's disposition of Claim 3, Claim 3 is essentially redundant
of Claims 1(a), 1(b), and 2 in this case.  Accordingly, Claim 3
is duplicative and should be dismissed for the reasons
applicable to Claims 1 and 2.


V. ADA Title II Claim (Claim 4)

 Under Title II of the ADA, "no qualified individual with a
disability shall, by reason of such disability, be excluded from
participation in, or denied the benefits of the services,
programs, or activities of a public entity, or be subjected to
discrimination by any such entity." 42 U.S.C. § 12132.  To
establish a violation of Title II, a plaintiff "must establish:
(1) that he is a qualified individual with a disability; (2)
that he was excluded from participating in, or denied the

benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (internal quotation marks and citation omitted).

Here, Mr. Lamy alleges that his sentence length and parole eligibility date have caused him to remain on the Suboxone MAT therapy waitlist, while other inmates with shorter sentences and earlier parole eligibility are prioritized. He has not alleged that he has been treated differently because of his addiction or any other condition amounting to a "disability" under the ADA. Therefore, Mr. Lamy has failed to state any ADA Title II claim upon which relief can be granted. Accordingly, the district judge should dismiss Claim 4.

## Conclusion

For the foregoing reasons, the district judge should dismiss this action in its entirety, for failure to state a claim upon which relief can be granted. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion.

Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


Andrea K. Johnstone
United States Magistrate Judge

June 14, 2022

cc:  Joshua W. Lamy, pro se